WOLF, J.
Appellant challenges her judgment and sentence for attempted second-degree murder. She raises three issues on appeal. We affirm, but find two issues merit discussion: whether the trial court committed fundamental error in failing to instruct on the. necessarily lesser-included offense of attempted manslaughter, and whether the trial court committed fundamental error in giving contradictory instructions on the duty to retreat which misstated the law and negated appellant’s only defense.
I. FACTS
The State presented evidence that appellant shot the victim, Catrina Howard, in the face during a dispute over a marijuana transaction. Howard testified that her cousin, Jason Marks, was attempting to purchase marijuana from appellant, but they got into a verbal dispute over payment. Howard stated that appellant then pulled out a gun. Howard testified she became defensive for both herself and her *254 cousin, so she punched appellant once in the face. In response, she stated appellant raised the gun and pointed it at her, and she put up her hands defensively in front of her face. Appellant then fired once, shooting Howard in the neck and hand. Howard testified that at the time of the shooting, she was standing ten feet away from appellant, she was not advancing on appellant or trying to hit her again, and no one was threatening appellant. Marks gave testimony consistent with that of Howard. A passerby also gave similar testimony that he saw appellant shoot the victim, who was not moving aggressively towards appellant.
Appellant testified in her own defense. She stated that she had the gun to her side and was backing away from Howard and Marks, trying to retreat, when Howard punched her. Appellant testified she raised the gun, aimed it at Howard, and fired because she believed doing so was necessary to protect herself. She stated she believed that Howard and Marks would have “jumped” her if she had not shot Howard.
The jury was instructed on the charged offense of attempted second-degree murder, as well as the lesser-included offenses of aggravated battery and aggravated assault. Counsel did not request an instruction on attempted manslaughter, and no such instruction was given. The jury found appellant guilty of attempted second-degree murder as charged.
II. MANSLAUGHTER AS A NECESSARILY LESSER-INCLUDED OFFENSE
Appellant argues the trial court committed fundamental error by failing to instruct on attempted manslaughter, which is a necessarily lesser-included offense only one step removed from attempted second-degree murder, for which she was convicted. See Fla. Std. Jury Instr. (Crim.) 7.4. See also State v. Montgomery, 39 So.3d 252, 259 (Fla.2010) (manslaughter is one step removed from second-degree murder and thus a necessarily lesser included offense); Williams v. State, 123 So.3d 23, 30 (Fla.2013) (reiterating that attempted manslaughter by act continues to be a cognizable offense so long as there is evidence that the defendant had the requisite intent to commit an unlawful act, although there is no crime of attempted manslaughter by culpable negligence).
Appellant reasons that because giving an erroneous or incomplete instruction on manslaughter as a necessarily lesser-included offense can be fundamental error, then the complete failure to instruct on manslaughter as a necessarily lesser-included offense must also be fundamental error. For the reasons discussed below, we disagree and find there was no fundamental error here.
Appellant notes it is well-established that if an instruction is requested, “the failure to instruct on the next immediate lesser-included offense (one step removed) constitutes error that is per se reversible.” State v. Abreau, 363 So.2d 1063, 1064 (Fla.1978). Appellant acknowledges that in Morris v. State, 658 So.2d 155 (Fla. 1st DCA 1995), this court found it is not fundamental error to fail to instruct on a necessarily lesser included offense in a non-capital case. However, she argues Morris is no longer good law. She argues the Morris court reached that determination by misconstruing the supreme court’s decision in Jones v. State, 484 So.2d 577 (Fla.1986). She further argues Morris was implicitly overruled by Montgomery, 39 So.3d at 259, and Haygood v. State, 109 So.3d 735, 741 (Fla.2013), in which the supreme court held that an inaccurate instruction on manslaughter as a lesser-in- *255 eluded offense only one step removed can constitute fundamental error.
Alternatively, appellant argues that if this court finds Morris correctly interpreted Jones as holding that the failure to request an instruction on a necessarily lesser-included offense in a non-capital case is not fundamental error, then appellant argues Jones is inconsistent with Montgomery, Haygood, and State v. Lucas, 645 So.2d 425, 426-27 (Fla.1994), all of which held an incomplete or erroneous instruction on manslaughter as a lesser-included offense only one step removed may be fundamental error.
As will be discussed below, we find (A) Morris correctly interpreted Jones, which held the failure to instruct on a necessarily lesser-included offense is not fundamental error in a non-capital case; and (B) Jones is not inconsistent with Lucas, Montgomery, or Haygood.
A. Jones
Appellant concedes that in Morris v. State, 658 So.2d 155, 156 (Fla. 1st DCA 1995), this court held the failure to instruct on a next lesser-included offense in a non-capital case is not fundamental error, relying on Jones, 484 So.2d 577. Appellant argues the Morris court misinterpreted the Jones opinion. We find this argument is without merit, and that it is well-established that the failure to instruct on a necessarily lesser-included offense is not fundamental error in a non-capital case.
In Jones, 484 So.2d at 579, the supreme court recognized that “a capital defendant, as a matter of due process, is entitled to have the jury instructed on all necessarily lesser included offenses,” and waiver of this right must be made by the defendant personally, not merely by counsel. However, the Jones court declined to extend this rule to non-capital cases, finding that “to apply the label ‘fundamental error’ ” in non-capital cases would “stray from the long and unbroken lines of precedent conditioning a right to jury instructions on lesser included offenses upon a request for such instructions ... and requiring a contemporaneous objection as a predicate to proper appellate review.” Id. (citing State v. Bruns, 429 So.2d 307 (Fla.1983); Harris v. State, 438 So.2d 787 (Fla.1983); Griffin v. State, 414 So.2d 1025 (Fla.1982); Ray v. State, 403 So.2d 956 (Fla.1981); Wheat v. State, 433 So.2d 1290 (Fla. 1st DCA 1983); Chester v. State, 441 So.2d 1165 (Fla. 2d DCA 1983)). Thus, the court concluded “no personal waiver is required in order to guarantee fundamental fairness in the non-capital context.” Id.
Appellant argues that Jones merely held a personal waiver of an instruction on a necessarily lesser-included offense is not required in a non-capital case. However, it seems appellant overlooks the Jones court’s acknowledgement of the “long and unbroken lines of precedent conditioning a right to jury instructions on lesser included offenses upon a request for such instruction ... and requiring a contemporaneous objection as a predicate to proper appellate review.” Jones, 484 So.2d at 579.
The supreme court has repeatedly relied on Jones to reiterate that a contemporaneous objection is required to preserve a claim that the court erred in failing to give an instruction on a necessarily lesser-included offense. See McKinney v. State, 579 So.2d 80, 83-84 (Fla.1991) (“[T]he trial court’s failure to instruct on the [one step removed] lesser-included offense ... is not preserved for review unless the trial counsel objects to the instruction given.”) (citing Jones, 484 So.2d 577); Parker v. Dugger, 537 So.2d 969, 972 (Fla.1988) (noting in Jones, the court “reaffirmed in a non-capital context the well-established rule ‘conditioning a right to jury instructions on lesser included offenses upon a request for *256 such instructions ... and requiring a contemporaneous objection as a predicate to proper appellate review.’ ”).
District courts have also found the failure to instruct on manslaughter or attempted manslaughter as a necessarily lesser-included offense one step removed is not fundamental error, and instead counsel must preserve the issue by requesting the instruction. See Cosme v. State, 89 So.3d 1096, 1097 (Fla. 4th DCA 2012) (failure to instruct on attempted voluntary manslaughter as a necessarily lesser-included offense one step removed was not fundamental error where counsel failed to request the instruction); Firsher v. State, 834 So.2d 921, 922 (Fla. 3d DCA 2003) (finding the failure to instruct on manslaughter as a necessarily lesser-included offense one step removed did not require reversal because counsel waived the issue by failing to request the instruction).
In summation, appellant’s argument that Moms misinterpreted Jones is without merit. Jones clearly held the failure to instruct on a lesser-included offense in a non-capital case is not fundamental error. Whether or not Jones is inconsistent with Lucas, Montgomery, and Haygood is discussed below.
B. Lucas, Montgomery, and Haygood
Appellant argues that if this court interprets Jones as holding the failure to instruct on a lesser-included offense in a non-capital case is not fundamental error, then Jones is inconsistent with three other supreme court decisions: Lucas, which held an incomplete manslaughter instruction can be fundamental error; and Montgomery and Haygood, which held an inaccurate manslaughter instruction can be fundamental error.
At first glance, it seems appellant’s argument is logical that if fundamental error occurs by giving an erroneous or incomplete instruction, then the total failure to give that instruction must also be fundamental error. However, Lucas, Montgomery, and Haygood are not inconsistent with Jones. Instead, the holdings in those three cases are consistent with well-established precedent that held if a jury instruction is given, that instruction constitutes fundamental error if it leaves the jury with an incomplete or inaccurate statement of the law on an element of the offense that the jury must consider in order to convict.
1. Lucas — Failure to Instruct on Justifiable or Excusable Homicide
Prior to 2010, the standard jury instructions stated that manslaughter could be proven by one of two ways: by act or by culpable negligence; however, the defendant could not be found guilty of manslaughter if the killing was either justifiable or excusable homicide. See In re Standard Jury Instructions In Criminal Case—No.2006-1, 946 So.2d 1061, 1062 (Fla.2006); In re Standard Jury Instructions in Criminal Cases—Report No. 2007-10, 997 So.2d 403, 404 (Fla.2008).[1]
As appellant correctly notes, in Lucas, 645 So.2d at 427, the supreme court held the failure to instruct on justifiable or excusable homicide in a manslaughter instruction is “fundamental error ... if the defendant has been convicted of either manslaughter or a greater offense not more than one step removed.” “The only exception we have recognized is where defense counsel affirmatively agreed to or *257 requested the incomplete instruction.” Id. at 427. The court explained that because “manslaughter is a ‘residual offense, defined by reference to what it is not,’ a complete instruction on manslaughter requires an explanation that justifiable and excusable homicide are excluded from the crime.” Id. (quoting Stockton v. State, 544 So.2d 1006, 1008 (Fla.1989)).
Arguably, the language in Lucas that requires “a complete instruction on manslaughter” could be read to require a manslaughter instruction where none was requested. However, in other related cases, the supreme court has indicated the failure to give a complete instruction is fundamental error only when there is a partial manslaughter instruction given.
Lucas relied on Stockton, 544 So.2d at 1008, in which the supreme court noted that “when a trial court reinstructs on manslaughter, it is then compelled to reinstruct on justifiable and excusable homicide as a necessary concomitant of manslaughter. The failure to do so erroneously leaves the jury with an incomplete and potentially misleading instruction.” (Emphasis added) (citing Hedges v. State, 172 So.2d 824, 826 (Fla.1965)).
Following Lucas, in Pena v. State, 901 So.2d 781, 786 (Fla.2005), the supreme court reiterated the “general rule ... where manslaughter appears on the verdict form either as a charged or lesser offense is that the jury must be instructed on the definitions of justifiable and excusable homicide.” (Emphasis added) (citing Lucas, 645 So.2d 425). The language in Stockton and Pena indicates that giving an incomplete instruction on manslaughter is fundamental error only “where manslaughter appears on the verdict form.” Pena, 901 So.2d at 786. Therefore, on its face Lucas is not inconsistent with Jones, which held the complete failure to give an instruction on a lesser included offense is not fundamental error in a non-capital case.
The supreme court has not specifically explained its reasoning for this distinction that giving an incomplete manslaughter instruction may be fundamental error, whereas the complete failure to give a manslaughter instruction is not. However, as will be discussed below, this distinction is consistent with the well-established principle of law that it is fundamental error to give a jury instruction that omits or misstates the law on an element that the jury must consider in order to convict. See Montgomery, 39 So.3d at 258 (citing State v. Delva, 575 So.2d 643, 645 (Fla.1991)).
2. Montgomery and Haygood— Erroneous Manslaughter by Act Instruction
Appellant argues that in addition to being inconsistent with Lucas, Jones is also inconsistent with Montgomery and Hay-good, in which the supreme court held a misstatement of the law in the standard manslaughter jury instruction may be fundamental error.
In Montgomery, 39 So.3d at 256-57, the supreme court found the standard instruction for manslaughter by act misstated the law because it erroneously required the jury to find the defendant intended to kill the victim. The court found the error was fundamental in that case because Montgomery “was entitled to an accurate instruction on the lesser included offense of manslaughter,” and the instruction was “ ‘pertinent or material to what the jury must consider in order to convict.’ ” Id. at 258 (quoting Delva, 575 So.2d at 645). The court reiterated the principle set forth in Delva that “ ‘fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict. Failing to instruct on an element of the crime over which the record reflects there was no dispute is not funda *258 mental error.’ ” Id. (quoting Delva, 575 So.2d at 644-45). The Montgomery court also found the error was fundamental in that case because manslaughter was only one step removed from second-degree murder, of which Montgomery was convicted. Id. at 259 (citing Pena, 901 So.2d at 787).
Subsequently in Haygood, 109 So.3d at 741, the supreme court clarified that “giving the manslaughter by culpable negligence instruction does not cure the fundamental error in giving the erroneous manslaughter by act instruction where ... the evidence supports a finding of manslaughter by act, but does not reasonably support a finding that the death occurred due to the culpable negligence of the defendant.” The court emphasized that both the Haygood and Montgomery decisions were based not on the jury pardon doctrine, but instead on the principle set forth in Delva that “fundamental error occurs in a jury instruction where the instruction pertains to a disputed element of the offense and the error is pertinent or material to what the jury must consider to convict.” Haygood, 109 So.3d at 741-42 (citing Delva, 575 So.2d at 644-45).
Montgomery and Haygood are based on the well-established principle, .as stated in Delva, that it is error to give a jury instruction that omits or misstates the law on a disputed element of the offense that the jury must consider in order to convict. This line of cases is not inconsistent with Jones because if the defendant does not request a jury instruction on a lesser-included offense, then the jury is not required to consider that offense in order to convict. Thus, there is no fundamental error. Stated differently, the supreme court has made the distinction that the defendant must preserve a request to have the jury instructed on a necessarily lesser-included offense, but once the jury is instructed on that offense, that instruction must be a correct statement of the law. If it is not, and if the error is pertinent to a disputed element that the jury must consider, and the defendant is convicted of an offense not more than one step removed, then the error is fundamental. Thus, Jones is not inconsistent with Lucas, Montgomery, Haygood, or the other related cases discussed above.
In a somewhat similar line of cases, the district courts have found that fundamental error in an incomplete manslaughter instruction is not waived even if defense counsel requested that the manslaughter instruction not be given at all, because “it is settled that that defendant’s desire to have no manslaughter instruction given at all ... does not amount to an agreement to have the issue instructed upon in a fundamentally erroneous fashion.” Bradshaw v. State, 61 So.3d 1266, 1266 (Fla. 3d DCA 2011) (citing Jimenez v. State, 994 So.2d 1141, 1143 (Fla. 3d DCA 2008)); see also Wade v. State, 155 So.3d 1257, 1259 (Fla. 1st DCA 2015); Hall v. State, 677 So.2d 1353, 1355 (Fla. 5th DCA 1996).
Similarly here, counsel’s failure to request a manslaughter instruction essentially expressed a desire not to have a manslaughter instruction given; however, if that instruction had been given in an incomplete or inaccurate instruction, the error would have been fundamental. Thus, the holdings in Lucas, Montgomery, and Haygood that an incomplete or erroneous instruction on manslaughter as a necessarily lesser-included offense can be fundamental error are not inconsistent with Jones, which held the failure to give any instruction on a necessarily lesser-included offense is not fundamental error in non-capital cases. As such, we find the failure to instruct on attempted manslaughter was not fundamental error in this case.
*259 III. DUTY TO RETREAT
Appellant argues the jury instructions regarding her duty to retreat constituted fundamental error because they misstated the law, were conflicting, and negated her only theory of defense, which was self-defense. We disagree.
The jury was given instructions on justifiable use of deadly force, consistent with the standard jury instructions, that stated appellant had the right to stand her ground and had no duty to retreat unless she provoked the use of force against herself:
A person is justified in using deadly force, if she reasonably believes that such force is necessary to prevent ... imminent death or great bodily harm to herself or another; or ... the imminent commission of aggravated battery against herself or another.
[[Image here]]
However, the use of deadly force is not justifiable, if you find the defendant initially provoked the use of force against herself, unless: A, the force asserted toward the defendant was so great, that she reasonably believed that she was in imminent danger of death or great bodily harm, and had exhausted every reasonable means to escape the danger, other than using deadly force on [the victim]; B, in good faith, the defendant withdrew from physical contact with [the victim], and clearly indicated to [the victim] that she wanted to withdraw and stop the use of deadly force, but [the victim] continued or resumed the use of force.
(Emphasis added). Then, the jury was instructed that appellant had a duty to retreat if she was engaged in unlawful activity, unless the danger was imminent and retreating would have increased that danger:
If the defendant was not engaged in an unlawful activity, and was attacked in any place where she had a right to be, she had no duty to retreat, and had the right to stand her ground and meet force with force, including deadly force, if she reasonably believed that it was necessary to do so, to prevent death or great bodily harm to herself, or to prevent the commission -of a forcible felony.
.... if you find that the defendant was engaged in unlawful activity, then you must consider if the defendant had a duty to retreat.
The defendant cannot justify the use of force likely to cause death or great bodily harm, unless she used every reasonable means within her power and consistent with her own safety to avoid the danger, before resorting to that force. The fact that the defendant was wrongfully attacked, cannot justify her use of force likely to cause death or great bodily harm if, by retreating, she could have avoided the use of that force. However, if the defendant was placed in a position of imminent danger of death or great bodily harm, and it would have increased her own danger to retreat, then her use of force likely to cause death or great bodily harm, was justifiable.
(Emphasis added). See Fla. Std. Jury Instr. (Crim.) 3.6(f).
Appellant argues the instruction that she had a duty to retreat if she was engaged in an unlawful activity was a misstatement of the law, because section 776.012(1), Florida Statutes (2009), stated a defendant has no duty to retreat regardless of whether she was engaged in unlawful activity. She argues the effect of this error was to give jurors a conflicting instruction that she both had no duty to retreat and had a duty to retreat if she was committing an unlawful act. She as *260 serts this conflict negated her only theory of defense, self-defense, and thus the error was fundamental. As will be discussed below: (A) the instruction was a misstatement of the law; however, (B) the instruction was not fundamental error under the facts of this case.
A. Duty to Retreat — §§ 776.012(1), 776.013(3), and 776.Oil, Fla. Stat. (2009)
Appellant argues the portion of the instruction that stated she had no duty to retreat if she was “not engaged in an unlawful activity” was a misstatement of the law because section 776.012, Florida Statutes (2009), permitted her to stand her ground regardless of whether she was engaged in unlawful activity.
From October 2005 until June 2014, two different provisions of the “Stand Your Ground” law, codified in chapter 776, permitted a defendant to use deadly force without retreating, only one of which required that the defendant not be engaged in unlawful activity. Section 776.012 stated:
[A] person is justified in the use of deadly force and does not have a duty to retreat if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.
§ 776.012, Fla. Stat. (2009). Section 776.013(3) stated a person not engaged in unlawful activity had no duty to retreat:
(3) A person who is not engaged in an unlawful activity and who is attacked in any other place [other than a dwelling, residence, or occupied vehicle] where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
§ 776.013(3), Fla. Stat. (2009).[2]
These statutes created two different standards. Under section 776.013, a person not engaged in unlawful activity was entitled to stand his or her ground if that person “reasonably believed it is necessary to prevent death or great bodily harm.” § 776.013(3), Fla. Stat. (2009). However, under section 776.012, there was no requirement that the defendant not have been engaged in unlawful activity, but the defendant must prove the deadly force was necessary to prevent “imminent death or great bodily harm.” § 776.012(1), Fla. Stat. (2009) (emphasis added).
Further, section 776.041, titled “Use of force by aggressor,” states the “justification described in the preceding sections of this chapter is not available to a person who: ... [initially provokes the use of force against himself or herself, unless” there was “imminent danger” and “he or she has exhausted every reasonable means to escape the danger other than the use of force,” or “withdraws from physical contact with the assailant” and “indicates clearly ... that he or she desires to withdraw.” § 776.041(2)(a)-(b), Fla. Stat. (2009).
*261 Here, instructions reflecting sections 776.012(1), 776.013(3), and 776.041(2) were read to the jury. The State argues that because appellant was engaged in unlawful activity — a marijuana transaction — she had a duty to retreat, and thus it was not error to instruct the jury pursuant to section 776.013. This court expressly rejected that argument in Garrett v. State, 148 So.3d 466, 471 (Fla.1st DCA 2014), instead finding that if a defendant who was engaged in unlawful activity provides “some evidence to support [a] claim of justifiable use of deadly force to prevent imminent death or great bodily harm or the imminent commission of a forcible felony” the defendant is “entitled to request and receive an instruction reflecting section 776.012(1).” “Therefore, it was error for the trial court to instruct the jury regarding Garrett’s unlawful conduct” by instructing on section 776.013(3) and instructing that possession of a firearm by a convicted felon was unlawful. Id. If a defendant’s claim of self-defense was based solely on the prior version of section 776.012(1), then it is “an incorrect statement of the then-existing law” to instruct that the defendant had a duty to retreat if engaged in unlawful activity pursuant to section 776.013. McGriff v. State, 160 So.3d 167, 40 Fla. L. Weekly D847 (Fla. 1st DCA Apr. 8, 2014) (finding the error in that case was preserved and harmful). Because appellant failed to preserve this issue for appeal, it is reviewable only for fundamental error, which is discussed below.
B. Fundamental Error
Appellant argues that because the jury was instructed both that she had no duty to retreat and that she had a duty to retreat if she was engaged in unlawful activity, the instructions misstated the law and were so conflicting that they negated her only theory of defense.
Appellant cites several cases for the proposition that “ ‘[wjhere ... a trial judge gives an instruction that is an incorrect statement of the law and necessarily misleading to the jury, and the effect of that instruction is to negate the defendant’s only defense, it is fundamental error and highly prejudicial to the defendant.’ ” Floyd v. State, 151 So.3d 452, 454 (Fla. 1st DCA 2014), review granted, SC14-2162 (Fla.2014) (quoting Carter v. State, 469 So.2d 194, 196 (Fla. 2d DCA 1985)).
The Garrett court found the error in instructing on both 776.012 and 776.013 was not fundamental in that case because “the jury was not precluded from considering Garrett’s affirmative defense, regardless of his unlawful activity.” 148 So.3d at 471. Based on the evidence presented and the instructions given, “the jury could have found that Garrett’s use of deadly force was justified and he had no duty to retreat because retreating would be futile given the ‘imminence’ of the danger he faced.” Id. at 472. Or, alternatively, there was “ample” evidence from which the jury could have found Garrett did not have a reasonable belief that deadly force was necessary to prevent an imminent threat against him. Id. “That the jury ultimately rejected Garrett’s claim of self-defense does not mean that the challenged instruction constituted fundamental error.” Id.
The reasoning of Garrett is equally applicable here. Appellant would have been entitled to request an instruction that she had no duty to retreat if the danger was imminent under section 776.012(1), and it was error to instruct that she had a duty to retreat if engaged in unlawful activity pursuant to section 776.013(3). Regardless, that error was not fundamental because it did not negate her theory of defense. Like in Garrett, even under the section 776.013(3) instruction, there was evidence from which the jury could have *262 found that although appellant was engaged in an unlawful activity, appellant had no duty to retreat and had the right to stand her ground because retreating would have been futile due to the imminence of the danger that she faced.
Appellant testified that she was retreating, “backing away slowly ... attempting to go back to the bus stop” where she had been standing prior to the marijuana transaction, when the victim punched her in the face. She testified she shot the victim because she believed if she did not, the victim and her cousin would have beaten her, and they could have potentially been armed. The fact that the jury rejected this theory of defense does not render the instruction fundamental error. As in Gamtt, there was “ample” evidence from which the jury could have rejected this theory of defense, including the testimony of the victim and an eye-witness that the victim was not within arm’s reach of appellant and was not advancing towards appellant when appellant shot her. 148 So.3d at 471.
We find this case is factually distinguishable from Floyd, 151 So.3d 452, and Ross v. State, 157 So.3d 406, 408-09 (Fla. 1st DCA 2015), in which this court found instructions that the defendants had the right to stand their ground so long as they were not engaged in unlawful activity conflicted with the “aggressor” instruction that they had a duty to retreat if they had provoked the use of force against themselves. In both Floyd and Ross, we found this error was fundamental because it negated the sole theory of defense for both defendants — that they had the right to stand their ground and had no duty to retreat. Floyd, 151 So.3d at 454; Ross, 157 So.3d at 408. Unlike the case at hand, neither Floyd nor Ross argued that they were attempting to retreat, or that retreating would have been futile due to the imminence of the danger that they faced. Instead, their sole theory of defense was that they had no duty to retreat. As such, the conflicting instructions on whether they had a duty to retreat negated their sole defense, and thus were fundamental error. -
In contrast here, appellant’s sole defense was not that she had no duty to retreat. Instead, as discussed above, she presented evidence that she was attempting to retreat when Howard punched her, and then she believed she had no option but to shoot Howard in order to prevent Howard and Marks from beating her. Thus here, as in Gamtt, the conflicting instructions on whether appellant had a duty to retreat did not negate her theory of defense. Under the instructions as they were given, the jury still could have found that appellant’s use of deadly force was justified if the jury had accepted her theory of defense. See Fla. Std. Jury Instr. (Crim.) 3.6(f) (“[T]he use of deadly force is not justifiable, if you find the defendant initially provoked the use of force against herself, unless: ... she reasonably believed she was in imminent danger ... and had exhausted every reasonable means of escape”); (“[I]f you find that the defendant was engaged in unlawful activity.... The defendant cannot justify the use of force likely to cause death or great bodily harm, unless she used every reasonable means within her power and consistent with her own safety to avoid the danger,” or unless “the defendant was placed in a position of imminent danger of death or great bodily harm, and it would have increased her own danger to retreat”). As such, we AFFIRM.
MAKAR and OSTERHAUS, JJ., concur.

. Following State v. Montgomery, 39 So.3d 252 (Fla.2010), the manslaughter instruction was amended to correct the manslaughter by act instruction and to state that a defendant cannot be guilty of manslaughter by committing “a merely negligent act,” or if the killing was justifiable or excusable homicide. Fla. Std. Jury Instr. (Crim.) 7.7.

. Both sections were amended in 2014, resolving this discrepancy. Section 776.012(2), Florida Statutes (2014) now states a defendant may stand his or her ground only if “not engaged in criminal activity and is in a place where he or she has a right to be.” Section 776.013(3), Florida Statutes (2014) now pertains only to a person "in his or her dwelling, residence, or vehicle,” and states there is no duty to retreat, without reference to unlawful activity.